IN THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO

| | | |
|---|---|---|
| JOSEPH GRIFFIN BECKHAM<br>108 Janeway<br>Greenwood, South Carolina 29649 | )<br>)<br>)<br>) | CASE NO.<br>JUDGE<br>**O9CVH 10 15513** |
| Plaintiff | )<br>) | |
| v. | )<br>) | COMPLAINT<br>(Plaintiff Demands A Trial By Jury) |
| NATIONWIDE MUTUAL<br>INSURANCE COMPANY<br>One Nationwide Plaza<br>Columbus, Ohio 43215 | )<br>)<br>)<br>)<br>) | |
| Defendant | ) | |

**COUNT ONE**

1. Plaintiff Joseph Griffin Beckham ("Beckham") is an individual who resides at 108 Janeway, Greenwood, South Carolina 29649.

2. Defendant Nationwide Mutual Insurance Company ("Nationwide") is a corporation having its principal place of business at One Nationwide Plaza, Columbus, Ohio 43215.

3. In or about April 2006 Beckham and Nationwide entered into contracts whereby Beckham became an agent for Nationwide. (Copies of those contracts are attached hereto as Exhibit 1 and Exhibit 2.) Nationwide has failed and refused to honor the obligations assumed by it under its contracts with Beckham. Nationwide's failures to honor the terms and conditions of its contracts with Beckham include, but are not limited to, the following:

   a. Preparing an unrealistic business plan for Beckham and refusing to assist Beckham in preparing a realistic business plan;

   b. Failing to provide Beckham with an adequate capitalization loan;

   c. Locating Beckham in an area overpopulated with Nationwide agents;

   d. Demanding that Beckham purchase an independent agency then refusing to provide Beckham with the funds necessary to complete that purchase;

   e. Interfering with Beckham's employees;

   f. Permitting additional agents to establish offices within Beckham's territory;

   g. Refusing to permit customers who wished to transfer their business from other Nationwide agents to Beckham to do so;

   h. Demanding that Beckham sell a line of non-standard insurance, and

   i. Failing to provide to Beckham competent support services necessary to enable Beckham to succeed as a Nationwide agent.

4. Nationwide took its actions in order to gain opportunistic advantage of Beckham in a way that was not contemplated at the time of contracting. Nationwide' actions as described above constitute breaches of Nationwide's contracts with Beckham and breaches of Nationwide's covenants to act in good faith and to deal fairly with Beckham. Nationwide's actions in breaching its contracts and its covenants of good faith and fair dealing with Beckham caused Beckham's agency to fail. On or about September 10, 2009 Nationwide unilaterally terminated its relationship with Beckham. On or about September 10, 2009 Nationwide seized all of the business and property of Beckham's agency. Beckham was not the only agent so opportunistically treated by Nationwide. Nationwide has demonstrated a pattern and practice of entering into contracts with agents and then breaching said contracts and covenants of good faith and fair dealing by providing inadequate capitalization, failing to provide competent support services and preparing fundamentally flawed business plans. As a direct and proximate result of Nationwide's breach of its contracts and covenants of good faith and fair dealing with him, Beckham has suffered monetary damages that include, but are not limited to, the following:

    a. Liability to Nationwide in the amount of approximately One Hundred Sixty Seven Thousand Dollars ($167,000.00);

      b.  Liability associated with the purchase of the independent agency in the amount of approximately Two Hundred Thousand Dollars ($200,000.00);

      c.  Business related expense in an amount of not less than One Hundred Thousand Dollars ($100,000.00);

      d.  Loss of income in an amount to be determined at trial but, in no event, less than Two Hundred Fifty Thousand Dollars ($250,000.00), and

      e.  Loss of business opportunity.

5.  Nationwide is liable to Beckham in an amount equal to the economic losses Beckham has sustained as a direct and proximate result of Nationwide's breach of its contracts with Beckham.

COUNT TWO

6.  Beckham realleges paragraphs 1 through 5 of this Complaint as if fully rewritten herein.

7.  Nationwide through its duly designated representatives and agents made specific promises to Beckham. Nationwide and its duly designated representatives and agents made those promises under circumstances that would lead those persons making the promises to reasonably expect that Beckham would rely on those promises and would change his position based

on those promises.  Those promises included, but were not limited to, the following:

a.  Nationwide would provide Beckham the training needed to establish a profitable Nationwide insurance agency;

b.  Nationwide would assist Beckham in preparing a realistic and workable business plan;

c.  Nationwide was committed to seeing Beckham succeed as a Nationwide agent;

d.  Nationwide would provide Beckham with sufficient capital to enable Beckham to successfully launch his Nationwide insurance agency;

e.  Nationwide would transfer a book of business of a recently deceased Nationwide agent to Beckham;

f.  Nationwide would provided funds with which Beckham could purchase the Lakelands Insurance Agency;

g.  Nationwide would find a location for Beckham in a territory that did not have sufficient Nationwide insurance agents;

h.  Nationwide would not permit any other new agents to establish and operate in Beckham's territory, and

i.  Beckham would be permitted to assume the book of business of any Nationwide insurance agent that retired or otherwise ceased doing business and who did not have an approved succession plan.

8. Beckham reasonably relied on the promises made to him by the agents and representatives of Nationwide. Based on the promises made to him by the agents and representatives of Nationwide, Beckham became a Nationwide agent, established a Nationwide agency and invested substantial amounts of his money and time in that agency. Nationwide failed and refused to honor the promises it made to Beckham. In fact, rather than taking steps to assure the success of Beckham's Nationwide insurance agency, Nationwide engaged in conduct detrimental to Beckham and conduct designed to insure that Beckham failed as a Nationwide insurance agent.

9. Nationwide breached its promises to Beckham. Under the circumstances of this case Nationwide is liable to Beckham for the damages that Beckham sustained as a direct and proximate result of Nationwide's failure to keep the promises made to Beckham by Nationwide's duly authorized representatives and agents. As a direct and proximate result of Nationwide's breach of its promises to him Beckham has suffered damages that include, but are not limited to, the following:

   a. Liability to Nationwide in the amount of approximately One Hundred Sixty Seven Thousand Dollars ($167,000.00);

   b. Liability associated with the purchase of the independent agency in the amount of approximately Two Hundred Thousand Dollars ($200,000.00);

    c.  Business related expense in an amount of not less than One Hundred Thousand Dollars ($100,000.00);

    d.  Loss of income in an amount to be determined at trial but, in no event, less than Two Hundred Fifty Thousand Dollars ($250,000.00), and

    e.  Loss of business opportunity.

COUNT THREE

10. Beckham realleges paragraphs 1 through 9 of this Complaint as if fully rewritten herein.

11. In or about February 2007 Nationwide presented Beckham with a document entitled Memorandum of Understanding ("MOU"). (A copy of that MOU is attached hereto as Exhibit 3.) That document had been unilaterally prepared by Nationwide without any negotiation between Nationwide and Beckham. Nationwide ordered Beckham to sign the MOU. Nationwide advised Beckham that if he did not sign the MOU he would encounter severe negative financial repercussions. In response to the threats made to him by Nationwide Beckham signed the MOU.

12. The MOU was not the product of a true meeting of the minds between Nationwide and Beckham. The MOU was not supported by valid mutual consideration. Beckham signed the MOU under duress created by Nationwide. For any or all of the reasons asserted in this paragraph

7

the MOU is not a valid contract between Beckham and Nationwide. The MOU does not create any obligations on Beckham that are enforceable by Nationwide. The MOU should not be construed to limit Beckham's actions in any regard.

WHEREFORE Beckham requests that this Honorable Court grant him judgment against Nationwide for damages in an amount to be determined at trial but, in no event, less than Seven Hundred Fifty Thousand Dollars ($750,000.00); order that the MOU is of no force and effect and that nothing in the MOU limits Beckham's actions in any regard; grant him judgment against Nationwide for interest on all sums found to be due him; grant him judgment against Nationwide for the costs of this action including the reasonable attorney fees he has incurred in the prosecution of this action, and grant him any further relief that this Court deems to be equitable and just.

A. Scott Fromson 0037889
32125 Solon Road
Solon, Ohio 44139
(216) 394-1300
FAX: (216) 394-1301
Attorney For Joseph Griffin Beckham

8

## AGENCY EXECUTIVE PROGRAM
## PERFORMANCE AGREEMENT

### Nationwide Mutual Insurance Company
### Performance Agreement

**WITNESSETH:**

That in consideration of the agreements expressed herein, Griffin Beckham, a Nationwide Agent ("Agent"), having an office at South Carolina and Nationwide Mutual Insurance Company and its affiliated insurance companies ("Nationwide") having an office at One Nationwide Plaza, Columbus, Ohio 43215, do hereby agree as follows:

The Agency Executive Program is comprised of two parts - this Performance Agreement for the Program ("Agreement"), and a Nationwide Agent's Agreement. The Agent agrees to the standards expected in both.

### Article 1 – Definitions

**Total Direct Written Premium ("DWP")** – The sum of all of Agent's direct written premiums from Nationwide Property/Casualty policies.

**Production Period** – The period beginning on the effective date of this Agreement and ending at the end of the thirty-sixth (36ᵗʰ) full month following the effective date of the Minimum Production Plan. Nationwide, in its discretion, may extend the Production Period up to three (3) months if Agent is not meeting the Minimum Production Plan during the final three (3) months of the original Production Period. If the Production Period is extended, Agent understands and agrees that all provisions of this Agreement shall continue for the extended period, except for Article 5 (Loan Waiver)

### Article 2 – Production Plans

Exhibit A, attached to this Agreement and incorporated by reference contains the Minimum Production Plan ("Minimum Production Plan") and Waiver Production Plan ("Waiver Production Plan") developed out of discussions between Agent and Agent's sales manager. All requirements of the Minimum Production Plan must be met on a monthly basis throughout the term of this Agreement beginning on the effective date of the Minimum Production Plan, including DWP, Life Commissions, and Life Sales. Nationwide shall, in its sole discretion, measure the achievement of Agent. The Sales Results Report (1361) monthly data will be

AEP U 4-16-05

used to calculate DWP Life Sales. and Life Commissions   Production generated as a result of Agent's participation in any funded Nationwide program, including but not limited to, the Mentor Program or an independent agency acquisition where Agent elects the conversion payment option, will be excluded when determining Agent's Minimum Production Plan and Waiver Production Plan results.

Nationwide reserves the right to change the Minimum Production Plan and Waiver Production Plan during the term of this Agreement.  Agent understands and agrees that the Minimum Production Plan and Waiver Production Plan will change upon the occurrence of any of the following, including but not limited to

1. The annual State Growth Objective. as indicated in Exhibit A, changes by more than two points (plus or minus).

2. Agent merges with another Nationwide agency.

3. Agent is assigned the servicing rights of policies previously serviced by another Nationwide agency

Agent further agrees and understands that failure to meet the requirements of the Minimum Production Plan may result in termination of Agent's Nationwide Agent's Agreement  Agent understands that Nationwide has established reports, policies and procedures to address Agent's failure to meet Minimum Production Plan requirements and that these reports, policies, and procedures may change from time to time.  Agent acknowledges receipt of a copy of these Nationwide policies and procedures

## Article 3 -- Business Plan

In order to determine participation in the Agency Executive Program, Agent submitted a business plan to Nationwide that is attached and incorporated by reference into this Agreement as Exhibit C ("Business Plan").  Agent agrees to work with their Sales Manager to implement and achieve the goals of this Business Plan as written and approved.  Agent further agrees that all funds from the loan related to this Agreement will only be used for business purposes outlined in the submitted Business Plan.

## Article 4 -- Loan

Qualification for participation in the Agency Executive Program does not qualify Agent for a loan from Nationwide Federal Credit Union ("NFCU").  Agent must also qualify through NFCU for financing of the loan outlined in this Agreement and will be required to produce materials and complete a loan application that will be underwritten by NFCU according to its loan standards, both at the time of the application and at the time that any money is disbursed. Nationwide will be providing a guaranty to NFCU for the loan. Agent agrees to provide documentation to Nationwide for verification that Agent has

2

AEP v 4 1405

sufficient personal collateral up to the total amount of the loan obligation, including interest, for repayment of the loan in the event that Nationwide is required to honor the guaranty to NFCU ("Documentation")   Documentation can be in the form of a letter of credit, a bank statement, a commitment letter from a lending institution, accumulated value of life insurance, a 401K statement (less penalty and taxes), mutual funds, stocks or bonds. Letters from third parties, such as relatives, will not be accepted unless the third party deposits the funds into an account in the name of the Agent and Agent provides documentation of same.  Agent shall provide the Documentation to Nationwide prior to executing this Agreement.

### A   Disbursements

1. The loan will consist of an initial disbursement within 10 days after the effective date of this Agreement.   Thereafter, the loan will consist of quarterly disbursements beginning at the end of the first three months following the effective date of this Agreement.

   (a) Disbursement 1 – Date 5-1-2006 Amount $50,000

   (b) Disbursement 2 - Date 8-1-2006 Amount $25,000

   (c) Disbursement 3 - Date 11-1-2006  Amount $20,000

   (d) Disbursement 4 - Date 2-1-2007 Amount $16,000

   (e) Disbursement 5 - Date 5-1-2007  Amount $20,000

   (f) Disbursement 6- Date 8-1-2007  Amount $15,000

   (g) Disbursement 7 - Date 11-1-2007 Amount $11,000

   (h) Disbursement 8 - Date 2-1-2008 Amount $7,000

   In order to receive each quarterly disbursement in addition to any requirements of NFCU, Agent must be meeting the P&C DWP portion of the Minimum Production Plan requirements at the end of each quarter and Agent's Primary Office must have permanently affixed, prominently displayed, external Nationwide signage.  Upon Nationwide's request, Agent will provide photographic evidence (with address visible) that Agent has met this requirement.  A quarterly disbursement that is missed due to Agent not meeting the DWP portion of the Minimum Production Plan will be held and paid along with the next quarter's disbursement at the end of the next quarter if Agent is meeting the DWP portion of the Minimum Production Plan at that time and is still eligible per NFCU standards. Only one disbursement may be held over at any time.

### B.  Loan Interest – The interest on the loan balance will be paid by:

3

AEP v 4 14.01

☒ Nationwide, and will be added to any outstanding loan balance, and therefore will be reflected in the DWP requirements for loan waiver as discussed below in Article 5. Interest paid by Nationwide will be reported as income (1099) to Agent to offset the interest statement provided by NFCU.

☐ Agent, on a monthly basis, throughout the term of the loan. Agent understands that if Agent selects this option, Agent will not be reimbursed the interest that agent paid should agent qualify for waiver as described below in Article 5

C. **Loan Repayment** – Agent agrees to pay NFCU according to the terms of the loan and according to the terms of this Agreement.

D. **Waiver of Privacy Rights** - Agent understands and agrees that certain information, including but not limited to, Agent's business operations, Business Plans and the loan will be disclosed between NFCU and Nationwide, and Agent hereby waives any privacy rights Agent may have in connection with such information.

## Article 5 – Loan Waiver

To qualify for loan waiver, Agent must satisfy the criteria as outlined below. Loans and interest that are waived will be reported as income (1099) in the calendar year in which Agent completes the Agency Executive Program.

Throughout the term of this Agreement, Agent's Primary Office must have permanently affixed, prominently displayed, external Nationwide signage. Upon Nationwide's request, Agent will provide photographic evidence (with address visible) that Agent has met this requirement.

Nationwide shall, in its sole discretion, measure the achievement of Agent on the following criteria:

Fifty percent (50%) of the outstanding balance of the loan plus interest will be waived if Agent is meeting the requirements of the Minimum Production Plan at the end of the Production Period.

Up to one-hundred percent (100%) of the remaining balance of the loan will be waived based on Agent's percentage achievement in producing additional DWP of Thirty Thousand Dollars dollars ($30,000) ("Waiver Goal") in addition to meeting the requirements of the Minimum Production Plan. DWP from subsequent assignments of Nationwide policies or DWP that results from merging with another Nationwide agency cannot be used to meet this requirement, nor can DWP from an independent agent acquisition if Agent elects the conversion payment option, nor can DWP obtained from any other funded Nationwide program, such as the Mentor Program. Also, any DWP counted towards the Waiver Goal will

4

AEP v 41605

not be counted towards achievement of any other Nationwide funded program that includes production requirements.

It will be possible for Agent to have the entire loan waived and terminate this Agreement prior to the end of the Production Period, if, at any time after the twenty-four month anniversary of the Minimum Production Plan, Agent has met the final Minimum Production Plan and Waiver Production Plan requirements, and has One Million Two Hundred Thousand Dollars ($1,200,000.00) in cumulative DWP over the prior twelve months, and has a three-year or twelve-month modified paid loss ratio of sixty-two percent (62%) or less.  There will be no early partial waiver

Agent must repay any portion of the loan and interest that is not waived, including any interest paid by Nationwide as described in Article 4(B).  Agent understands and agrees that failure to repay the loan could result in a default of the loan.

I acknowledge that I have read and fully understand Article 5 (Loan Waiver) of this Agreement.

<u>JGB</u>
Agent's initials

## Article 6 – Expenses

Agent is responsible for the expenses of his/her agency as defined in Agent's Nationwide Agent's Agreement.

## Article 7 – Training and Development Requirements

The insurance industry requires continuing education on the products, coverages, and regulations that govern this industry.  Also, in order to insure a fundamental understanding of Nationwide Products, Agent agrees to participate and meet the requirements of a training and development program, attached to this Agreement and incorporated by reference as Exhibit B ("Training and Development Requirements") Nationwide reserves the right to change the Training and Development Requirements during the term of this Agreement and will notify Agent in advance in writing of any such changes.  Agent further agrees and understands that Agent is responsible for all expenses associated with any training.

## Article 8 – Agent Security Compensation

Agent's Nationwide Agent's Agreement contains a deferred compensation program called Agent Security Compensation Plan ("ASC").  If Agent meets the qualifying conditions for ASC during the term of this Agreement, Agent understands and agrees that Agent will not be credited or paid any amounts under ASC or the program currently available at the end of the term of this Agreement, unless Agent successfully completes the requirements contained in

5

AEP v 4.14.05

this Agreement, except Agent is not required to achieve full loan waiver as described in Article 5

All restrictive covenants contained in Agent's Nationwide Agent's Agreement will apply

## Article 9 – Conditions

A **Countersigning Agents For Non-Resident Risks.** During the term of this Agreement, Agent will use one of the Nationwide programs providing countersigning agents in non-resident states.  This includes the sharing of commissions as required by that program. After the termination of this Agreement, Agent will have other equally acceptable ways of handling this responsibility.

B. **Agent Has No Ownership Interest in Policies, Renewals, or Expirations** – Agent agrees and understands that Agent will not have any ownership interest in the policies, renewals, or expirations of the policies written with Nationwide or through the Agent Choice Plus Network during Agent's tenure as an agent.

C. Insurance – Agent will maintain continuous errors and omissions coverage and will participate in the Nationwide program or otherwise provide a copy of the declaration page from their carrier. If Agent does not participate in the Nationwide program, the program Agent does participate in must provide, at a minimum, the same level of coverage and dollar limits.

## Article 10 – Commissions and Bonus

Commissions will be paid as stated in Agent's Nationwide Agent's Agreement.  Nationwide offers a Contingency Commission bonus program to its agents, that is calculated at the end of each calendar year.  During the term of this Agreement, Agent will only be eligible for a modified version of the Contingency Commission bonus program ("AE Performance Bonus"). To be eligible for the AE Performance Bonus, Agent must have completed at least twelve (12) full calendar months of this Agreement prior to the calendar year-end.  The Choice Addendum Contingency Commission grid will be used to calculate the AE Performance Bonus, except the Growth multiple will be based on the year-end P&C DWP portion of the Minimum Production Plan target instead of the state growth target.  Should agent qualify for Choice Plus status as of 12/31 of the prior year-end, the Choice Plus Contingency Commission grid will be used.  Agent must be on track for all aspects of the Minimum Production Plan to be considered for the AE Performance Bonus.

An AE Performance Bonus will not be paid if Agent meets the requirements at a later date.

If this Agreement is terminated prior to the end of the Production Period due to Agent Achieving early full loan waiver as described above in Article 5, Agent will no longer be eligible for the AE Performance Bonus and will convert to the Contingency Commission

6

AEP v. 4.14.05

bonus program, which will use the Agent Choice Program Contingency Commission grid, using the growth multiples found in that grid.

## Article 11 – Other Agreements and Severability

Should any of the provisions of this Agreement be found to be in conflict with any provisions of any other agent agreements currently in effect between Nationwide and Agent, those provisions set forth in this Agreement shall control. Also, if any clause or part of this Agreement shall be held invalid for any reason, the parts thereof not invalid shall remain in full force and effect.

## Article 12 – Collection

In addition to all other remedies that it may pursue, Nationwide shall have the right to recapture any amount due Nationwide from any future compensation due Agent.

## Article 13 – Term and Termination

This Agreement will begin on 5-1-2006 and end at the end of the Production Period or upon Agent achieving early full loan waiver as described in Article 5. Agent may terminate this Agreement at any time with (10) business days' written notice to Nationwide, or at an earlier date by mutual agreement of the parties, which agreement shall not be unreasonably withheld. Agent agrees that failure to meet the terms of this Agreement (other than full loan waiver), including repayment of any portion of the loan, may result in immediate termination of this Agreement, and if this Agreement terminates prior to the end of the Production Period (except as described in Article 5), it may result in termination of Agent's Nationwide Agent's Agreement. Agent understands that if his/her Nationwide Agent's Agreement is terminated, this Agreement is automatically terminated. Agent further agrees and understands that, as stated in Article 2, failure to meet the requirements of the Minimum Production Plan may result in termination of Agent's Nationwide Agent's Agreement. In the event of cancellation or termination of this Agreement, Agent understands that Agent remains responsible for any financial obligation Agent incurred in relation to this Agreement, including any interest paid by Nationwide described in Article 4(B).

## Article 14 – Governing Law

This Agreement shall be deemed to have been made under and governed by the laws of the State of Ohio without regard to Ohio's choice of law rules.

## Article 15 - Survival Of Obligation

The obligations of the parties under this Agreement that by their nature continue beyond the expiration of the Agreement shall survive any termination or cancellation of this Agreement.

AEP v 4.1403

**Article 16 – Non-Waiver**

No term or provisions hereof shall be deemed waived and no breach excused, unless such waiver or consent shall be in writing and signed by the party claimed to have waived or consented. Any consent by any party to, or waiver of, a breach of the other, whether express or implied, shall not constitute a consent to, waiver of, or excuse for any other different or subsequent breach.

_____          5/1/06
Sales Officer Signature                                            Date

I have read and understand the terms of this Agreement.

_____  Joseph  Griffin  Beckham  _____
Agent (print name)

_____          4/24/06
Agent Signature                                                  Date

8

AEP v. 4 14.03

Oct. 21. 2009 10:27AM          NATIONWIDE INSURANCE          No. 1373   P. 19

# NON-COMPETE PROVISION

It is the responsibility of the Agent to adhere to any past agreements in place with other carriers with particular attention to non-competition clauses. Nationwide does not encourage or support the violation of any non-competition clauses contained in Agent's prior agreements with other carriers. This provision also applies to any other staff associated with the Agent's agency.

I have read and understand the terms of this provision.

_Joseph Goltha Beckham_
Agent (print name)

_[signature]_
Agent Signature

9

# INDEPENDENT CONTRACTOR AGENT'S AGREEMENT

## PREFACE

It is the intent of this Agreement to define the conditions governing the business relationship between the parties involved.  Only if both parties understand their duties and responsibilities can a mutually satisfactory relationship be established and maintained.  The overall objectives of this Agreement are:

1. To provide a relationship which will result in the best possible service to Nationwide and the customer.

2. To assist the Agent in establishing and maintaining a growing agency which is profitable to both the Agent and the Companies.

3. To maintain the Companies' financial strength at the level necessary to protect the policyholders' interest.

## AGENCY APPOINTMENT

Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide Life Insurance Company, Nationwide General Insurance Company, Nationwide Property and Casualty Insurance Company, Nationwide Assurance Company, Nationwide Insurance Company of Florida, Colonial County Mutual Insurance Company, and Nationwide Lloyds, collectively referred to in this Agreement as, "we", "us," "Nationwide" or the "Companies," insurance corporations organized and existing under the laws of the States of Ohio, Wisconsin and Texas with their principal offices in Columbus, Ohio appoint, for those Companies which are authorized in the State listed below,

*Joseph Gottfeld Beckhum* referred to in this Agreement as "you" or the "Agent" of

*909 Name St        Newbury  SC   Newbury*
Street-Route             City        State        County

as an agent to represent the Companies in *South Carolina* while properly licensed so to act in accordance with the provisions of _____
State

this Agreement.  This Agreement is to become effective *05 – 01 – 06* (month/date/year), and applies to all business written with the Companies and serviced on the Company's behalf by the Agent under this or any prior agreement.

1.  Independent Contractor.  The parties agree that the purpose of this Agreement will be best served by your acting as an independent contractor.  Therefore, it is agreed that you are an independent contractor for all purposes.  Because you are an independent contractor and not an employee, you are solely responsible for paying all federal, state, and local income and self-employment taxes as well as the timely and correct reporting and paying of all other taxes.  As an independent contractor, you have the right to exercise independent judgment as to time, place, and manner of carrying out the provisions of this Agreement consistent with your obligation to policyholders, and otherwise carrying out the provisions of the Agreement consistent with your obligation to provide the best possible service to the Companies and the customer.  However, you understand that the Companies have exclusive title and control of all expirations and therefore have the right to service Nationwide customers at any time.  Insurance being a closely regulated business, it is understood that it will be necessary for us to provide you with certain manuals, forms, records, and such other materials and supplies as are necessary in the conduct of an insurance business.  All such property furnished to you by the Companies or on behalf of the Companies, and all copies thereof, shall remain the property of the Companies and shall be returned to them in good condition upon any cancellation of this Agreement.  You shall not retain or deliver to any other person or entity any of the foregoing or any summary or memorandum thereof.  We may offer to you, from time to time, training, counsel, and guidance based upon our accumulated experience in the sale and servicing of business.  However, it is understood that you may

Eff. 01-01-2004                               I                          All Eastern States

EXHIBIT 2

reject or accept such offers at your discretion unless the training or such that it is legally mandated and an acceptable equivalent is unavailable elsewhere.

2.   **Expenses.** As an independent contractor, you will pay all expenses in connection with your Nationwide insurance agency, including, but not limited to, expenses for manuals, forms, record supplies, and computer service. You will not incur any indebtedness on behalf of us in connection with expenses resulting from your Nationwide agency.

3.   **Licenses.** As an independent contractor, you will be responsible for securing and keeping in effect any licenses required by the Companies or regulatory agencies to represent us as an agent. You agree not to solicit any lines of insurance unless you have the required license authorizing you to do so.

4.   **Exclusive Representation.** It is agreed and understood that you will represent us exclusively in the sale and service of all insurance products. Such exclusive representation shall mean that you will not solicit or write policies of insurance in companies other than those parties to this Agreement, either directly or indirectly, without the written consent of these Companies. You cannot hold appointments with non-Nationwide companies without the written consent of the Companies. It is not intended that the use of state or federal insurance pools for risks not eligible for Nationwide shall be a violation of this clause.

5.   **General Conduct and Representation.** You will maintain a good reputation in the community that you serve and will direct your efforts in the field of insurance toward advancing the business and interest of the Companies to the best of your ability. You agree to use the Companies' name and logo in any manner which could directly or indirectly lead to the sale of a NW product, in accordance with the Companies' policies and procedures. In the conduct of your business, you will comply with all applicable insurance laws and regulations.

6.   **Grant of License.** The Companies grant to you a personal, non-exclusive, non-transferable, limited license to use the trademarks, service marks, and names ("Marks") of the Companies on or in connection with the business conducted pursuant to this Agreement. You acknowledge that all right, title and interest in and to the Marks belong to the Companies, and any use you have made or will make of the Marks has conferred and will confer no rights or benefits of ownership upon you. You further agree that all items or materials bearing the Marks produced or distributed by you shall be maintained at a high-quality standard acceptable to the Companies. All materials that incorporate the Marks or otherwise imply a relationship with Nationwide products or services must be pre-approved by the Companies.

7.   **Fiduciary Responsibilities.** All funds coming into your possession from customers as premiums or considerations for insurance policies issued by the Companies are funds of the Companies received by you in a fiduciary capacity and shall be immediately remitted to us. If any such funds are not remitted to us, we shall have a first lien on all compensation due or which may become due you to the extent of such funds. Each of the Companies is authorized to deduct the entire amount of such funds due, either before or after the cancellation of this Agreement, from any compensation due you.

In addition to all other rights that Nationwide may have to collect any funds due it, we shall have the right to offset and recapture any amount you owe us from any future compensation due you, regardless of its source.

It is agreed and understood that you will have access to Nationwide proprietary information, confidential information, and/or trade secrets (collectively, "Confidential Information") in the course of your representation of the Companies as an agent. Examples of such Confidential Information include but are not limited to the Companies' insurance rates and underwriting experience, present and future marketing efforts, and customer policy information. Therefore, you acknowledge your understanding that Nationwide marketing plans, insurance rate schedules, customer lists, policy expiration dates, underwriting guidelines and other similar information, and all copies thereof, are types of Confidential Information and that if Confidential Information were disclosed or made available by you to our competitors, we would suffer damage and injury in the marketplace. It is agreed that any Confidential Information obtained by you will be held in strict confidence and at no time disclosed or imparted to any other person or entity without our prior express written approval. You also agree to take reasonable steps to ensure that third parties do not gain access to Confidential Information in your possession, including, but not limited to, restricting access

Eff. 01-01-2004                                           2                              All Eastern States

to all documents containing Confidential Information (including, but not limited to, electronic files) to your agents and employees. You further agree that you will not utilize any Confidential Information for any purpose other than Nationwide's benefit, during or after the termination of this Agreement. Upon termination of this Agreement, you agree to return all Confidential Information, and all copies thereof, to the Companies immediately. In the event of any violation of this Clause, Nationwide will be entitled to permanent injunctive relief and damages.

8. **Compensation.** Any compensation due you under this Agreement from any of the Companies, may be paid, to you, on their behalf, by any of the other Companies. For all services rendered under this Agreement by you, you shall be compensated solely in accordance with the General Conditions and the Schedules of each Company attached hereto and made a part hereof except for such additional compensation payable to you under paragraph 12.

It is agreed that we will pay you any and all compensation earned by you, but not credited to your account at the time of entering into this Agreement, on business written by you while employed by us under our agent's employment agreement. It is understood, however, that we may deduct from any compensation due you under this Agreement any commissions previously credited to your account while an employee agent, which subsequently become unearned as a result of the termination or lapse of any policy or coverage.

Should any Company desire to amend its General Conditions or Schedules, notification in writing of such amendment shall be given to you on or prior to its effective date, and shall become a part of this contract on its effective date.

9. **Overpayment of Compensation.** Any compensation paid to you for premiums later returned or credited to the customer or any other overpayment of compensation shall be a debit due us from you. In addition to all other rights available to us as a creditor we shall have the right to deduct such compensation or overpayment from any future compensation due you, regardless of its source.

10. **Cancellation.** This Agreement shall be in force until canceled by either party.

This Agreement shall automatically cancel upon the date your license to act as an agent for the Companies is revoked or canceled, or upon your death. Further, due to the personal nature of our relationship, you or the Companies have the right to cancel this Agreement at any time with or without cause after written notice has been delivered to the other or mailed to the other's last known address. It is understood that the Agent shall have access to the Agent Administrative Review Board, and its procedures, in accordance with the Company policies in effect at the time of the agent's request.

Upon termination of this Agreement by either the Companies or you, (i) all rights, licenses, and privileges in and to the Marks granted to you hereunder shall automatically revert to the Companies; (ii) you agree to execute any and all documents requested by the Companies evidencing such automatic reversion; (iii) you shall return to the Companies all items you are obligated to return as described in Paragraphs 1, 7 and 12 (b)(1); and (iv) at the Companies' discretion and your expense, within ten (10) days of termination, you shall destroy or dispose of, to the Companies' satisfaction, all other items, materials, signage and other objects bearing or including any of the Marks. You may not make reference in new marketing materials distributed to the general public as to your prior affiliation with the Companies or any other prior connection with the Marks.

11. **Service to Customer Upon Cancellation.** Consistent with the Companies' exclusive use and control of all customers, it is understood that upon cancellation of this Agreement, the Companies shall retain the exclusive right to continue to provide insurance services to any and all customers and to continue to solicit each customer for additional business.

12. **Agency Security Compensation.**

   a. **Extended Earnings Payable**

   You qualify for Extended Earnings payable upon qualified cancellation of this Agreement when you have completed twelve (12) calendar months of service to the Companies as an insurance agent

Eff. 01-01-2004                          3                          All Eastern States

Upon qualified cancellation of this Agreement an amount equal to the renewal service fees paid to you by each Company for the last full twelve (12) calendar months immediately preceding such cancellation subject to the following exceptions

(1)   Renewal service fees earned from joint underwriting associations and state automotive insurance plans shall be excluded

(2)   For purposes of Extended Earnings renewal services shall be reduced by 50% on reinsurance facility and line 19 auto business.

(3)   Extended Earnings on Nationwide General business shall be calculated at 70% of the last 12 months total compensation paid to you on such business.

(4)   Extended Earnings will be retroactively reduced by the amount of renewal service fees originally included in the Extended Earnings calculation on any commercial policy or account which does not renew in the 12 months following cancellation of this Agreement on which policy or account you were paid $20,000 or more in renewal service fees during the preceding 12 month period.  This chargeback will not apply if cancellation of this Agreement occurs due to your death, permanent and total disability or attainment of age 65.

(5)   Extended Earnings will also be reduced by any amount due the Companies.

b.   Amounts Payable Upon Qualified Cancellation

(1)   If you die or become totally and permanently disabled which results in the cancellation of this Agreement, you or your beneficiary, or the estate of your beneficiary will receive the Extended Earnings for which you qualify.

(2)   If at the time this Agreement is cancelled for reasons other than death or total and permanent disability, you will receive the Extended Earnings for which you qualify

c.   Provision for Payment

After deducting any amount paid to you under this paragraph for cancellation or termination of any prior Agreement, or as Extended Earnings under any former agreement, or any amounts due the Companies from you, the Companies will pay to you, or should you not survive, your beneficiary or the estate of your beneficiary, your Extended Earnings.

You may elect a payment option as made available by the Companies.  If you fail to make such an election, Extended Earnings will be paid to you under an automatic option as defined by the Companies.

d.   Qualified Cancellation

Unless you have induced or attempted to induce, either directly or indirectly, policyholders to lapse, cancel or replace any insurance contract in force with the Companies, the cancellation of this Agreement shall be a qualified cancellation for the purposes of this Agreement

e.   Cessation of Extended Earnings

All liability of the Companies for Extended Earnings provided for in Paragraph 12 and its subparagraphs shall cease and terminate if any one or more of the following events shall occur. Both parties agree that a termination of the Companies' liability to pay Extended Earnings is not be construed as liquidated damages, and is not a substitute for any of the remedies to which the Companies may otherwise be entitled

(1)   You fail to surrender and return in good condition, within ten (10) days, all Confidential

information as defined in Paragraph 7 of this Agreement, as well as all materials, records, automation equipment, manuals and supplies and any and all other property or equipment provided to you by the Companies during the course of this Agreement, together with any copies thereof, or you fail to destroy or dispose of other items bearing or including the Marks as described in Paragraphs 8 and 10; or

(h) After cancellation of this Agreement, you, or any beneficiary of yours under this program, directly or indirectly, by and for yourself or as agent for another or through others as their agent, solicit or service the policyholders of the Companies or interfere in any way with existing policies or policyholders of the Companies within 25 miles of your business address (or addresses) for a period of three years, or furnish any other person or organization with the name of any policyholder of the Companies so as to facilitate the solicitation by others of any policyholder for insurance or for any other purpose.

f. Extended Earnings is intended to be in lieu of the compensation under benefits awarded by any state statute or regulation. If you elect any benefits of any such statutes or regulation then the amount of such benefits so received shall be deducted from the benefits due you under paragraph 12. If the exact amounts of any such statutory or regulatory benefits are known at the time of the cancellation of this Agreement, then this deduction shall be immediately made and the balance of such benefits under paragraph 12 shall commence as provided for under the provision of paragraph 12. If the exact amount of such statutory or regulatory benefits are not known at the time of the cancellation of this Agreement, then the payment of any benefits under paragraph 12 shall be deferred until such time as the amount of such statutory or regulatory benefits become known.

g. Amendments and Termination

The Companies reserve the right to amend or terminate this plan. If the Companies so determine to terminate the Plan, the Companies will notify you at least sixty (60) days prior to such termination, in writing. No change in the Plan or termination, however, can alter or modify rights or benefits received or granted prior to such change or termination.

13. **Agent's Activities After Cancellation.** You agree that if this Agreement is canceled for any reason, by and for yourself or as agent for another or through others as their agent, broker or employee or through others as their agent, solicit or service the policyholders of the Companies or interfere in any way with existing policies or policyholders of the Companies within 25 miles of your business address in the final year of this Agreement for a period of one year, or such other period being the longest period permitted by law less than one year. If we find it necessary by legal action to enjoin you from competing with us, the non-compete period shall be one year after such injunction is obtained.

In any jurisdiction where a covenant similar to that appearing above is held to be invalid either by statute or by judicial decision, you agree that upon cancellation of this Agreement for any reason by any party, you will not, either directly or indirectly, by and for yourself or as an agent, broker or employee for another or through others as their agent, solicit or service the policyholders of the Companies that you solicited or serviced as a Nationwide agent for a period of two years, or such other period being the longest period permitted by law less than two years. If we find it necessary by legal action to enjoin you from competing with us, the non-compete period shall be two years after such injunction is obtained.

14. **Agent Number.** For the benefit of the Companies and the agent, a number is assigned to each agent to facilitate more efficient use of the Companies' computer system. This number is the property of the Companies and may be reassigned for identification within that system. Your name may be printed for your benefit on billings and materials received by our policyholders. If this Agreement is canceled, your name will be removed as soon as practical, but you acknowledge that occasional error may cause it to continue to be printed.

15. **Pricing, Products, Rules, and Regulations.** The insurance business being subject to changing laws, regulations, and conditions, it is understood and agreed that each Company will prescribe rules, regulations, prices, and terms under which it will insure risks, and each Company retains the right to

Eff. 01-01-2004      5      All Eastern States

change, alter or amend such rules, regulations, prices, and terms, including the right to limit, restrict, or discontinue entirely the acceptance or writing of any policies, coverages, lines or kinds of insurance, at any time it deems it advisable to do so, and without notice to or consent of the Agent, and any such change, alteration, amendment or limitation shall become effective on the date specified by the Company  You are expected to utilize and comply with all of the Companies' policies and procedures, including but not limited to underwriting, sales, rating and claims administration and processes.  The Company reserves the right to require all transactions to be through its designated computer system at the Agent's cost and expense. The Company's representatives, at the Company's expense, shall have the right (but not the obligation) from time to time, during normal business hours, on reasonable written notice to the Agent, inspect, audit, copy and make extracts from the Agent's books, files, records, and accounts relating to business transacted pursuant to this Agreement.

16.    **Errors and Omissions.**  Agent agrees to keep errors and omissions insurance continuously in force at reasonable levels as required from time to time by the Companies during the term of this Agreement

17.    **Authorization to Direct Bill.**  Agent and the Companies agree that it is to their mutual benefit for the Companies to bill the policyholders directly.  Agent hereby gives the Companies permission to use his or her name on those billings and use of his or her name for a reasonable period following the cancellation of this Agreement.

18.    **Extent of Authority.**  You will obligate us only to the extent authorized by the rules and regulations set forth by us from time to time, or as may be authorized in writing by an officer of the Companies.

19.    **Amendments or Modifications.**  Except as otherwise provided herein, this Agreement may be changed, altered, or modified only in writing signed by you and an officer of the Companies.

20.    **Non-Waiver.**  No terms or provision hereof shall be deemed waived and no breach excused, unless such waiver or consent shall be in writing and signed by the party claimed to have waived or consented. Any consent by any party to, or waiver of, a breach by the other, whether express or implied, shall not constitute a consent to, waiver of, or excuse for any other different or subsequent breach.

21.    **Assignment of Agreement.**  The Companies rely upon your particular personal abilities in carrying out your obligations under this Agreement, therefore, no assignment of your rights, responsibilities, or any sums due you under this Agreement shall be made without prior written consent signed by an officer of the Companies.

21.   **Agreement Defined, Prior Agreements Superseded.**  Whenever used in this Agreement, the term "Agreement" shall mean any contract in writing captioned "Standard Agent's Agreement," "Master Agent's Agreement," "Agent's Employment Agreement," "Corporate Agency Agreement," "Agent's Agreement" or "Independent Contractor Agent's Agreement" between you and the Companies executing this Agreement, as well as any documents referenced or incorporated.  The execution and delivery of this Agreement shall supersede and take the place of any prior Agreement, provided that the execution and delivery of this Agreement shall not affect your obligation to pay any money due the Companies from you under the provisions of any other agreement, written or oral, nor shall the execution of this Agreement nullify any negotiated compensation agreement, differing from the schedules of compensation attached to former Agreements, entered into between you and the Companies on cases written prior to the execution of this Agreement.

23.   **Severability.**  If any clause or part of this Agreement shall be held invalid for any reason, then such invalidity shall not affect any part of this Agreement and the parts thereof not invalid shall remain in full force and effect

24.   **Legal Action Under This Agreement.**  It is agreed that no action, suit, proceeding at law or in equity shall be brought under this contract unless it is commenced and process is served within three years after the cause of action for which suit is brought.  If the limitations set forth in this paragraph are prohibited by the statutes of the state in which this Agreement is issued, then these limitations shall be deemed amended to agree with the minimum period of limitation permitted by such statutes.

25.   **Attorneys' Fees.**  [illegible]

IN WITNESS WHEREOF, the Agent has signed his or her name and the Companies have caused their corporate names to be affixed by their duly authorized representative to duplicate copies hereof.

NATIONWIDE MUTUAL INSURANCE COMPANY
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY
NATIONWIDE LIFE INSURANCE COMPANY
NATIONWIDE GENERAL INSURANCE COMPANY
NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY
NATIONWIDE ASSURANCE COMPANY
NATIONWIDE INSURANCE COMPANY OF FLORIDA
COLONIAL COUNTY MUTUAL INSURANCE COMPANY
NATIONWIDE LLOYDS
NATIONWIDE AGRIBUSINESS INSURANCE COMPANY

By
_____                    4-19-06
For the Companies                           (Date)

_____                    4/19/06
Agent                                       (Date)

39-0029747

## MEMORANDUM OF UNDERSTANDING

This MEMORANDUM OF UNDERSTANDING ("MOU") is made and entered into this *15* day of *FEBRUARY* ____, 2007, by and between *JOSEPH GRIFFIN BELKHAM* ("Agent") and Nationwide Mutual Insurance Company, its affiliates, subsidiaries, successors and assigns ("Nationwide").

WHEREAS, Agent and Nationwide have entered into discussions to resolve issues in connection with the Agency Executive Program Agreement/Replacement Agency Executive Program Agreement and Independent Contractor Agent's Agreement, which the parties have entered into and seek to resolve all claims based upon contract, obligation of good faith and fair dealing, unjust enrichment, declaratory judgment, bad faith and any and all other claims which have arisen or may have arisen between Agent and Nationwide from the beginning of time until the date of this MOU;

NOW, THEREFORE, in consideration of the mutual promises set forth herein, Agent and Nationwide agree as follows:

1.     In consideration of Nationwide's promise to pay Agent a total of $15,000 within fifteen days of the execution of this MOU (the "Cash Payment") and in consideration of Nationwide's promise to reimburse Agent up to $35,000 for business related expenses, Agent agrees to completely release and forever discharge any and all claims which Agent may have against Nationwide, its affiliates, subsidiaries, successors and assigns, whether known or unknown, which were or could have been asserted against Nationwide from the beginning of time until the date of this MOU.

2.     It is further agreed that Agent will utilize the Cash Payment solely and exclusively to fund certain essential business activities associated with the operation of the insurance agency located at *1123 S. MAIN ST. GREENWOOD, SC 29649* and/or the Agent's satellite office(s). The parties intend such activities to include the payment of rent, business overhead, marketing and/or advertising expenses, employee salaries, and other similar business-related expenses as contemplated in the Agent's business plan.

3.     Agent and Nationwide further agree that the Agent will submit receipts to regional sales management pertaining to business expenses such as those noted in Section 2 above and that Nationwide will reimburse Agent for business expenses up to $35,000.  The parties agree that any submissions for reimbursement must be submitted prior to December 1, 2007.

4.     Agent and Nationwide also agree that a portion of the Cash Payment shall be utilized by Agent to work with a duly licensed certified public accountant or accounting firm to prepare and submit a

EXHIBIT "3"

Oct. 21. 2009 10:30AM                                          No. 1373   P. 30
2009-Jan-14 08:56 AM Nationwide 6142498048

2/2

39-0029747

2

business plan (the "Certified Business Plan") to Nationwide for the GRIFFEN BRUCKHAM AGENCY agency no later than ninety days after the execution of this MOU.

5.      Upon receipt and submission of the Certified Business Plan, Agent agrees to enter into discussions with Nationwide's Regional Management Team in order to develop a mutually acceptable and approved business plan for the Agent's insurance agency (the "Negotiated Business Plan").

6.      In further consideration of the promises made herein, Agent and Nationwide agree to keep the MOU, the Cash Payment, the Certified Business Plan, the Negotiated Business Plan and all negotiations conducted pursuant to the MOU confidential (collectively the "Confidential Information"), and Agent will not disclose this Confidential Information to anyone unless Agent is subpoenaed or otherwise compelled to testify in a court of law.  In the event Agent is subpoenaed or otherwise compelled to testify in any manner relating to the subject matter of this MOU, Agent shall provide Nationwide immediate notice by contacting via fax and certified mail the Senior Vice President, Division General Counsel, PCIO Practice Group, The Office of General Counsel, Nationwide Insurance, One Nationwide Plaza, Columbus, Ohio 43215-2220, (fax) 614-249-2418, and afford Nationwide the opportunity to take steps to limit or prevent the disclosure of any Confidential Information.

7.      Nothing in Section 6 shall prevent Agent from disclosing the amount of the Cash Payment or reimbursements to Agent's accountant and/or federal, state or local taxing authorities.

8.      Agent and Nationwide agree that nothing contained in this MOU modifies or amends any obligation specifically set forth in the Agency Executive Program Agreement/Replacement Agency Executive Program Agreement and Independent Contractor Agent's Agreement executed by the parties.

9.      Agent and Nationwide agree that this MOU shall be governed by the laws of the State of Ohio.

IN THE PRESENCE OF

_____                         _____
Witness                                         Agent

_____                         _____
Witness                                         On Behalf of Nationwide